Our next case is number 22-1200, Amaranth, Inc. v. Domino''s Pizza. Mr. Ruiz. Good morning, your honors. We're here on appeal on a 285 ruling made by the district court below. Which based on the standards that this court has consistently applied in appellate cases, we find that it was not an exceptional case and that the district court abused its discretion by not properly identifying the key elements necessary factually to find an exceptional case. We can't find any case where the district court has found it unreasonable for a plaintiff to continue a case where the patent office and the PTAB has repeatedly on multiple CBMs advised the parties in the court that the claims of the 077 patent, the key patent that was litigated here, on preponderance of the evidence standard, more likely than not, had patentable subject matter, and went on to say that in that patentable subject matter there was eligible limitations that led to that result. Let's assume for the moment that you're right, that for at least part of the period, and I'm not sure that there's evidence that that's true for all, but that for part of the period it was reasonable to continue to litigate that. Yes, your honor. We have cases that say if there's misconduct, the fees have to be allocated to the fees incurred by the misconduct. But I'm not aware of a case that says you can't award fees for the litigation of the entire case if it's ultimately found to be baseless, even though it wasn't found to be baseless until the end of the case. Do you have any authority that says that under those circumstances you have to allocate fees between the period where it was reasonable and the period where it was unreasonable? Yes, your honor. I think that the stone basket is such a case, by the way the court addressed that. If I could use an analogy, maybe that would help. Well, an analogy isn't cases. Well, yes, an analogy is so that I think we can put the cases in perspective. Because I think there are a number of cases that while they don't specifically say that you need to allocate by a date, because of the way the cases are written, when it becomes unreasonable is critical. In this case, the cases were filed. There were some preliminary motions. After that, the cases were stayed. There was no litigation on the four patents that were asserted. Why? It was because the CBMs were filed. So the court stayed the case. There would be no litigation until it was sorted out what was valid and what was invalid. There were multiple CBMs. And out of that, two things happened. One, some of the claims of some of the patents were found invalid. Is there a case that says you have to allocate fees where the ground for the 285 award is baselessness? What case says you have to allocate fees between the period when it was known to be baseless and the period before it was known to be baseless? I think Stone Basket is one of those cases where there had to be some kind of notice. The patent holder had to know at some point in time that continuing on after that point in time was unreasonable. Let me just see if I understand, because there are so many different patents here. You're talking about the 077, and you're saying that for the judge to assess fees on your litigating that was an abuse of discretion because during the stay period, the CBM was rejected or there was no institution decision. Well, it was part of that, Your Honor. It was the fact that at first it was rejected, but not only said that there was patentless subject matter, but then the court lifted the stay and said, let's go. You said not only that, but who said, what did you say about... The PCAB said that the 077 claims contained eligible subject matter, and it was more likely than not, this is the quote, that they were patentable. Can you give us the site for that? Yes, Your Honor. The sites for that are in the March 26, 2014 eligible subject matter appendix 1191 to 1231 is the opinion. Because they just declined to institute, right? There was no decision by them, right? Well, appendix 1231, that's true, they declined. But when they declined, they commented on it, and they said two things. One, at 1231, we determined the information presented in the petition does not establish that any claim of the 118 and 077 patents were more likely than not unpatentable. They also distinguished the 077 claims from the claims of the other patents that they found ineligible. I'm sorry, 1231? Yes, Your Honor. It's after the final page of the first set of appendices, Your Honor, it's the very final page. Yeah. So you're saying that at what point could the judge not look at the claims and say, I think they're clear. I guess the other question I have is, I may be wrong, but I recall that the judge placed a lot of emphasis with regard to the litigation of the 077 patent on the infringement side of it, not on the validity side of it. Am I mistaken about that? He did address the infringement, and Domino's, in their brief, focuses on the infringement part. And that was the main focus of what the judge talked about. No, it was not, Your Honor. The judge specifically said in his opinion that that was the weak argument, the weaker argument that Domino's had. He focused the whole thing on his decision two months before trial in this case, granting the 101 motion. That was the first time it was raised against the 077 patent in this case. Certainly, it was reasonable for the judge to find that after our decision in the Apple case, that it was unreasonable to continue, right? No, Your Honor, because the Apple case only addressed the other three patents. And when that happened, Amroth dropped those patents and all the claims, and also dismissed two appeals that related to those patents. Let's assume that we disagree with you. We think that after the Apple case, it was reasonable for the district court to find that you're pursuing litigation as baseless. Let's just assume that. Yes, Your Honor. The question is, what about the fees before the Apple case? You relied on these institution, non-institution decisions by the PTAB, and you relied on other things to say that up until that point, at least, we were reasonable in continuing the litigation. So I come back to the question of what case says that you have to allocate fees under those circumstances. You mentioned Stone. I looked at it in your brief. You don't describe Stone that way in your brief. I'm not sure what it is. I'm not familiar with the Stone case. Why can't the court say, well, it may have been reasonable to litigate this for a while, but at the end of the day, it was baseless, and I can award fees for the whole case on that ground? Well, you're right. Stone Mountain relies on the concept of notice, and when did the patent holder know that it was unreasonable to continue? And you can't hammer someone all the way back to the beginning if it was reasonable to continue the litigation to a point in time when it became unreasonable. Okay, well, let's assume, hypothetically. I think this is just following up on what Judge Dyke said. If we conclude that shortly by the time the district court litigation resumed after the stay, the Apple decision had found ineligibility of the other three patents in the same family and that there was no reasonable basis. Let's assume we don't think that's an abuse of discretion. So what were the fees beforehand? I mean, how do you divide it up? The fees beforehand were minimal. There was no litigation. So the real fees that you've been assessed with regard to the 077 are the fees after the stay was lifted, and by that time, the Apple decision had ruled on ineligibility. Of the other three patents. Right, of the same family. And the 077 patent had survived multiple attacks on CBMs in the patent office. Okay. So it's a green light. It's not a red light. If you have a red light, you proceed at your own risk. It was a green light. The patent office gave the green light. Can I just round out what I said? So Judge Dyke's concern, which I share, isn't really apt here necessarily because the fees predominantly, if not almost exclusively, that are assessed on the 077 deal with after the stay was lifted, and she found at that time there was a basis, no basis for you to go forward. Right. That's the timing. No, the judge never identified the timing. That's one of the problems. Judge Sebron never identified the timing. He just looped everything together and said from the beginning. Nothing was really happening. It was. Until the stay lifted. What? Until the stay lifted. But when the stay lifted, it lifted because we were moving ahead on the patents that were valid. The 077 patents had not been found invalid. They had been supported by the patent office, reaffirmed as valid in effect, more likely than not valid. Domino's, in their brief at page 39, admits that there was no reason not to go forward with the 077 claims. They admit that. What that means, they've admitted it was reasonable to proceed at that point. Is that fair? You're saying they should have what? Rejected the opportunity to lift the stay? No. They agreed to lift the stay. Of course they did. That doesn't demonstrate that they think that there was a reasonable basis to pursue these claims. They filed no motion in the court. If they thought these claims were invalid, as opposed to what the patent and the PTAB did, they should have made some motion in that regard. Well, there was a summary judgment motion, wasn't there? Pardon me? Was there a summary judgment motion? Not until a month before trial. 18 months later. Am I missing something? Does this have to do with the fact that Pizza Hut dropped out and there was a settlement and then they took over for Pizza Hut? No. No one filed a motion on either non-infringement or 101 or validity until two months before trial. In that period between the lifting of the stay and the time when that was raised as an issue, there were nothing but approvals. We won the markment. No non-infringement claims on the markment. There was another PTAB decision in December of 17, where they said even in light of Apple and Mayo and Alice, we the PTAB still believe these patents are valid. The problem with this case is that the judge didn't look at it in that chronology. When was it under stone basket? When did Amherst really know or have reason to know that proceeding they did at their risk because the patents were likely invalid or unenforceable? It didn't happen. All the parties agreed to lift the stay and go forward with full-scale litigation. No one raised that issue again in conflict with the patent office. Can I ask you, let's just assume we disagree with all of that and that when the Apple decision issued, your going forward was unreasonable and is sufficient for finding exceptional conduct. I know you disagree with it, but how much of the attorney fees awarded were before that? Virtually nothing. Because at that point the case was staged so that everybody could figure out through the patent office whether these claims were valid or invalid. The patent office spoke, the court of appeals here spoke, 077 claims were valid. The others were not. You were talking about a second PTAB decision? Yes, there were three of them. And didn't they just deny institution in that case because a substantially similar petition was brought before? No, they actually addressed it because the Starbucks defendant in this case asked them to consider their prior decision in light of Alice and Mayo and the Apple decision. And the PTAB reviewed that and said specifically, and that is on appendix 861, they said we have reviewed it in light of those Supreme Court decisions and the Pellet decision and we still believe that the 077 claims have eligible subject matter and we're not changing our decision. Your Honor, what do I do as a lawyer representing a client in this situation? When do I tell them? This company had 48 licenses of this technology. They had 48 licenses. They were pursuing it and the patent office said your patents are fine, go ahead. The court says okay, we're going to lift the stay, go ahead. We find for you unmarkment. They also dismissed a tax on infringement on the contentions. What do you say? Abandon it? Give up and walk away? That can't be the result here. The result has to be based on when did the client know or have reason to know that the 077 claims would be invalid. You're not able to cite a case that says it's improper for the district court to award fees going back if at the end of the day the district court concludes that the litigation is baseless. There are cases requiring allocation with respect to misconduct. I have not found a case and you have not called any such case to my attention saying that at the end of the day it's baseless. You cannot award fees going back. Your Honor, maybe then this is the case that has to say that because it would be contrary to every aspect of patent law, the presumption of validity. Where did you argue that in your blue brief? We did argue it, Your Honor. Where? Do you mean that this would be a unique case? That we should allocate based upon when it became unreasonable or exceptional. Well, the whole last section of our brief, Your Honor, it says that the court did not properly allocate at the point in time when it became unreasonable. That's the point we made. To do something else would be to say that every case would be an exceptional case if in the end you find that the patents are ineligible. Your Honor, I urge you to consider the fact that when you're litigating a case, there are a lot of contrary decisions. But until it's clear to the patent holder that his case does not have a base, it's baseless. The Munchkin case is a clear example of that. It can't just be weakness, it's got to be baseless. And when did that happen in this case? It didn't happen until the very end. When they threw the Hail Mary in the air on 101, it was 10 days before trial. Can I just ask you, because we don't have these cases that often, is baselessness a requirement under Octane? Your Honor, it's one element of it. On Octane Fitness, the court said you don't have to have both objectively unreasonable and bad faith. It's not a requirement, but it's a ground for awarding fees. Right, a ground for awarding fees. But how can a patent holder who's got the presumption of validity and the right to enforce a patent is told after review of the patent office that you're okay? And the court says, we're going to go ahead with full-blown litigation. No one says at that point that there's another attack on the patent. And you go forward, and it's not until the very end that both infringement are raised and validity are raised. Infringement is never decided by the court. It would have required an additional markman decision to do that. And I just think, Your Honor, if you look at the cases, even though there's not... There wasn't an allocation of stone basket because it was reversed. But the whole notion of stone basket is there has to be a point in time when the patent holder has a reason to know that the case is not valid. You don't cite stone for that proposition in your brief. Pardon me? You don't cite stone for that proposition in your brief. That is the case we've cited, Your Honor. And we say, yes, it's unreasonable, and the notice is required. Okay. I think those are the questions we're out of time. We're going to get two minutes here long. Thank you. Mr. Angellari. May it please the Court, Your Honors. Frank Angellari for Domino's. Judge Subraw should be affirmed because he conducted a classic totality of the circumstances analysis under Octane, and there were a lot of circumstances in this case for patents. What about the question of awarding fees before it's apparent the case is baseless? He addressed that. So there's probably two answers to that, I think, Your Honor. One is that baselessness isn't required. He looked at the totality of circumstances, which included the litigation conduct over the entire. Well, she certainly awarded fees because she concluded it was baseless, right? I believe he did award fees in part because he concluded it was baseless. He also cited the litigation or the conduct of the litigation. Counsel, I believe, misspoke. When Judge Prost asked about the weak infringement side of the case, the judge did not say that that was the lesser part of his opinion. He did say that the litigation conduct was not Domino's strongest ground, but he in no way limited his finding of clear non-infringement. Okay, but we can't affirm just because some of what the district court relied on was correct if the district court relied on things that he shouldn't have relied on. I don't believe the district court relied on anything he shouldn't have relied on. He relied on. . . Okay, but their argument is it wasn't apparent the case was baseless until the end. I'm not sure that's right, but let's assume for the moment that's correct. Can the court award fees for the whole litigation because, as it turns out, it's baseless at the end? Well, if it's baseless at the end, it's baseless at the beginning, and at some level. . . It's baseless at the beginning, but they didn't know it. It's their conviction. Well, what do you rely on? I mean, just to follow up Judge Dyke's question. We've already established, okay, by the time the stay is up, we've got the Apple decision, and we've got a rejection for institution under the CDM. So what, at that point in time, was sufficient that the other side should have known that they shouldn't proceed with it, that this patent is going down? Two major things, Your Honor. First, on the infringement side, which they know, they know their case. We don't know it until they tell us what it is. The judge said that a cursory review at Appendix 10 of our menus would have established that they were not synchronous. All the claims require synchronous. No, no, no, no, no, no. That's not responsive to the question. We're talking about the award based on a theory of baselessness. Yeah. Okay? And the question is, if it was not baseless from the beginning, can you award fees going back to the beginning, and if so, why? I'm sorry, then I misunderstood Judge Prost's question. I thought she was asking me for why we thought it was baseless from the beginning. So if I misunderstood, I apologize. So now I don't understand. What's the question? Because I want to make sure I answer the right question. Well, I don't mean to reframe the question. I thought the question was, in terms of the—let's focus on the invalid. Okay, sure. So what is the basis for concluding that it was apparent that it was invalid from the beginning? Well, you have the—let's start from the beginning, pre-Apple. Is that the question? I guess you'd have to say the Menusoft verdict. I don't know if the judge concluded that the 101 on 077 was baseless from the beginning because he looked at the whole case. But when did the clock start running on the fees? Was it after—I mean, I think your friend conceded that it was after— essentially the fees were incurred after the stay was lifted. He said most of the fees were after the stay was lifted, and we agree with that, Your Honor. And so— Okay, so let's move to the when the stay was lifted. What was the state of affairs that would have led them to conclude that there was no basis for going forward? Okay, so my understanding of that question is there's two bases. One is the infringement, which I say the judge said that a cursory review would have showed that— and that's something they can do at the beginning of the case, frankly. That's got nothing to do with validity. But with respect to validity, Your Honor, the Apple decision was a clear signal that the case going forward had no merit for three reasons. If you compare the Apple decision with this Court's panel decision on the merits of our case, they match up very closely. So in Apple, the Court found step one was not met. But what do you do? I mean, I understand your argument, but what do you do if you're the lawyer for Amaranth and you've got the Apple decision, but you've also got the PTAB saying we think these are eligible? I mean, that is a bit of a quandary. Can't they rely on the PTAB to at least go forward and take the chance that they're somehow distinguishable from Apple? So if they're distinguishable from Apple, they should have been able to articulate that, Your Honor, in the panel decision before this Court in our case. They didn't. They ran the same argument. In both Apple and this Court, the step one was not met because the result's oriented. Step two was not met because the spec says the software is commonly known. And, in fact, Apple addressed synchronous claims. But separately, Your Honor, with respect to the PTAB, the PTAB did not address the case on the merits. The pages that counsel cited were from the 2014 decision. The 2017 decision clearly analyzes under 324 and 325, which are just discretionary denials. Well, really? Could you show us where they said that? Where? You said what? Well, where they said they didn't reanalyze the merits in the first decision. I thought what they said was we've considered Apple, but we've changed our mind about institutions. They said that the petitioner presented the same arguments on the substance and that the petitioner was arguing that the law had changed, and they said that's not enough for us to revisit it. There is a footnote where they address Apple. That's on Appendix 858. And the panel does say there are a number of limitations found in the 077 patent claims that are not in related patents. They don't identify the limitations. Okay, but it's not just saying we're going to deny this because it's a repetitive request. They appear to be addressing the merits, other than saying that we're still convinced after Apple that these claims are not invalid under 101. They didn't institute, Your Honor. That's fair. But Apple is a higher authority than the PTAB, and this Court is a higher authority than the PTAB, and the plaintiff made the same essential arguments to this Court when arguing the 077 patent that they made for Apple. And so the point, Your Honor, is your question is, how are they supposed to know? Well, if they've got a different frame of reference or a different set of arguments for this patent over the others, then that would have manifested in the panel decision here. Let's try that. Suppose we were to conclude that halfway through,  it would be reasonable to litigate and there was no conclusive evidence that the patent was invalid. But then after that point, it became apparent that the claim was baseless. Is your position that nonetheless, despite that finding, you can award fees for the entire case? So I have to clarify a question on your hypothetical because the District Court did look at the manner of litigation which applied across the whole case. So I think the answer to your question is... Just baselessness. Suppose the award is entirely based on a finding of baselessness. Under my hypothetical, can the District Court award fees for the earlier part of the case? It's a discretionary question, so I think it depends on the facts. But I suppose, Your Honors, if the hypothetical is so sort of pristine, if you will, that you have a case that's proceeding, it's perfectly fine, and then on a particular date, some event happens and the litigants know that, okay, this is the date when it becomes baseless and then it proceeds, I think then that would be a good breakpoint, Your Honor. But that's not the facts of our case. I understand. What do you mean, good breakpoint? They can't award fees for the earlier period? I think it would depend on the facts, but you could make a good argument that... I gave you the facts. Well, I think that would be a good case for not awarding fees for the prior period. If there's nothing going on that's sort of octane-worthy before a particular event, and the particular event happens, then that certainly is within the judge's discretion to not award fees for that part. Having said that, hypotheticals are tough in this case. That's not the question. It's not a question of whether the judge can refuse to award fees. My question is, can the judge award fees in his discretion for the earlier period? I think the answer would be, if that case makes it truly exceptional, I suppose from the plaintiff's perspective, Your Honor, they'll say, we didn't know. From the defendant's perspective... I know, I know, but what's the answer to the question? The answer is yes. Can the judge award fees for the earlier period? Yes, because the reason, Your Honor, is from the defense's perspective, it doesn't make a difference. Because the defense had to... Is there any authority? I'm not aware of authority that deals with that sort of clean of a hypothetical. But again, in this case, there were a lot of circumstances for patents. The first three patents that were found to be weak, the plaintiff doesn't even challenge that. Can I just get some clarification for what you were talking about right before that was that there were two PTAB proceedings, and I thought the second one was rejected by the PTAB, and this is at Appendix 1255, because they'd filed other petitions and they said it would simply just be unfair to the patent owner to go again. I thought it was on the process ground and not on the substantive ground that that went down. I'm not sure if there's redundancy in the appendix, but I know that at 1193, Your Honor, you have a 2014 decision on the merits, and at Appendix 848 you have a 2017 decision that cites 324 and 325. And they do, in a footnote, Your Honor, a footnote on page 858, talk about the Apple decision. Just to further sort of comment. And that's the 2017 or the 2014? The 2017 decision, Your Honor, starts at 848. Okay, thank you. At 856 there's a summary of the various proceedings. The 2017 is the one that mentioned Apple. Correct. Okay. Some of the other questions that were asked about why the summary judgment came later, there was a trial on priority involving a party called IPDEV that sort of delayed things. The Stone case was cited. In that case the district court found no notice because there was a key priority that was sort of buried in invalidity contention, so that's not the case here. And then on Munchkin as well, that's really distinguishable because there the party had taken inconsistent positions on whether some conduct was allowable or not. I think there's just two final points, Your Honor, that are worth mentioning, and they have to do with the sort of general conduct of the case. The plaintiff is sort of saying, we didn't know, we didn't know, we didn't know. But one of the things that the district court found significant, and I think it is significant, with the idea of suing 40 people and making the case sort of larger than it has to be. After the Pizza Hut settlement, we moved to bring the 101 issue to the fore, and Amaranth strongly opposed it. And if Amaranth was trying to sort of get to the right answer and minimize things, they would have said, well, okay, let's let the 101 motion go, but they strongly opposed it. That's a fact that this district court was aware of, that this district court lived with this sort of litigation conduct. And then the second thing is there's this notion that, hey, if you'd told us we would have stopped maybe. Well, that's obviously not true because this court found summary judgment on all but two of the – excuse me, affirmed summary judgment on all but two of the claims. Those two claims were remanded just for jurisdictional purposes, and they continued. So that the idea that this is somehow Domino's fault for not sort of raising things early enough, it's not accurate. And at the end of the day, the district court found essentially, objectively unreasonable infringement. The Apple decision makes the invalidity objectively unreasonable. And the district court lived through 10 years of litigation conduct that he addressed in his decision, all of which are part of the totality of circumstances that support fees. Unless the court has any questions, I will step down. Okay, thank you. One clarifying fact, I'm not sure it is that important, because the opinion in this case followed the judge's 101 decision in September of 2018 after all the litigation had concluded almost. But this court did find that there was a difference between the other patents and the 077, and specifically in its opinion at 219 WL5681315 discussed the fact that they understood and reaffirmed what the patent board had said, that these were different and distinct from those claims that were decided in that Apple decision. So there was no question that this was a different issue for the 077 claims. They were distinct claims. They had different limitations. And again, Your Honor, I think it's very important, certainly to any client, and it would be a bad precedent if there's no notice and there's no indication to a patent holder until a certain point that his patents are invalid to hit him for the entire case. Do you think the district court's exceptional case finding is based entirely on the invalidity ground? No, there is, although the judge said it was a weaker part of it, I think the core was, yes, invalidity. But he also mentioned the fact that there was this infringement issue. But that infringement issue also wasn't raised until two months before trial and required an additional markman. But I don't understand why it's incumbent upon the defendant to point out weaknesses in your case. Now, if you have good grounds to think that there's validity going forward, that's one thing. You know whether you're infringing or not. It's not their obligation. Your Honor, we had 23 infringement contentions in the case. Dominos attacked them, and the judge rejected every attack on the infringer. When did you find out that they weren't synchronous? They were synchronous. Synchronous is not the issue here. That is not correct. It's not synchronous. Okay, I'm not going to take time to discuss that. No, I understand, and that's the problem because it required a claim construction on the term's main menu. That was the issue of whether that was a synchronous or not. It was not about synchronous. Everybody agreed on the term synchronous. But Dominos said this is a new issue in June of 18. We need a markman judge. The judge asked for briefs but never decided it. So until that was decided, how could we see whether it applied to our claims? They moved for summary judgment on infringement, right? But like two months before trial and wanting a new markman decision. They never raised it in markman. The markman was decided. They never filed a motion. So it was a hail Mary at the end. And we'll never know the outcome because we'll never know what the judge would have done with a markman. So this whole infringement thing is just a red herring. It's really about whether or not these patents were eligible. And when did we find out that they weren't eligible? I don't want to take your time, but I thought the facts were clear. After the stay was lifted, there were summary judgment motions. Pizza Hut did its one on 101, and they did theirs on non-infringement. No, that's not what happened. What happened was the stay was lifted in January of 17. There were no motions of any kind on validity or infringement until two months before trial in June of 2018. And then ten days before trial, the one on one motion was granted after the parties were sent to mediation and after Pizza Hut settled for a very substantial settlement. So if you look at it from the perspective of my client, there was nothing in that period of time that would indicate, other than what the patent office said, that these patents were likely valid. No one challenged it. The court didn't. The parties didn't. And this is kind of the case, again, of stone basket. You can't lay in the weeds, right? And if you believe the patent's invalid, you have to step up. Tell us, because the alternative is we've got the patent office saying it's valid. So what do we do? What do I do in representing this client? Say just abandon it because you won in the patent office, you won the Markman, you won on the infringement contentions. No one's raised an issue. I just go to them and say, yeah, I've got to abandon the case because of this Apple decision that dealt with different claims that were different in different patents. I can't do that. Thank you. Thank you, Your Honor. Thank you very much.